# THE PLYMOUTH COAL CO. v. ADAM KOMMISKEY.

### ERROR TO THE COURT OF COMMON PLEAS OF LUZERNE COUNTY.

Argued April 12, 1887—decided May 16, 1887.

A miner contracted with a coal company to furnish his own labor and supplies and to mine coal at certain rates. It was the usage of the company, when the time of a laborer employed by the miner was returned, to pay him and charge the miner's account. In a suit by a laborer against the company to recover pay for his time, he testified that, when he called on the company for his pay, the paymaster informed him that his time had been returned by the miner but the latter had drawn his own account in full. The paymaster testified that the plaintiff's time had not been returned, and that in fact he did not know that plaintiff had been in the miner's employ until after the latter had closed his account: *Held,*

1. That the obligation of the company to pay the laborer could only exist when his time was turned in before the miner's account had been fully drawn.

2. That it was the laborer's duty to see that the miner made a proper return of his labor; and whether or not such return was made was a question for the jury and not for the court.

Before MERCUR, C. J., GORDON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.; PAXSON, J., absent.

No. 74 January Term 1887, Sup. Ct.; court below, No. 1008 October Term 1885.

In March, 1885, the Plymouth Coal Company, operating the Dodson mine, in Luzerne county, made a con'ract with John Rothers, a miner, by which the latter was to mine coal for the company at the rate of seventy-six cents for each car of coal mined, and one dollar and sixty-five cents per yard for driving headings, Rothers to find his own supplies and labor. Rothers employed Adam Kommiskey as a laborer at the rate of two dollars and twelve cents per day or shift. When the contract was ended Rothers went to the paymaster's office and drew from the company the money due him less his store account. Kommiskey had worked for a miner who had a contract with the same company prior to March, 1885, and had

been paid by the company by direction of the miner out of the earnings of the miner's contract. After he ceased to work for Rothers he went to the paymaster's office and demanded pay for his labor and was refused. Kommiskey then brought suit against the company.

The plaintiff testified, through an interpreter, in his own behalf, that he had worked eight shifts or days, in March, 1885, at $2.12 per shift; that when he went to the paymaster for his pay the latter told him his time was turned in and that the miner had taken everything out of the store. On cross-examination: he had been employed by John Rothers; he and the paymaster couldn't understand each other very well; he had an interpreter, Joseph. Re-direct: Lance was the paymaster; he had paid plaintiff when he had worked for other miners, who had always turned his time in.

Walter Lance, the paymaster, called for the defendant company, testified as to the contract with Rothers, and that his account was overdrawn; that Rothers had not turned in Kommiskey's time or given him any order before being paid in full himself, and that he did not know that plaintiff was working for Rothers before the latter received his pay. Davis, the mine-boss, testified that the rule of the mine was to pay the laborer when the miner turned in his time, and it was the custom for the miner to keep the laborer's time and turn it in; that it was not the company's rule to see after the time of the laborer.

The defendant's attorneys submitted certain points, when the court, STANLEY WOODWARD, J., charged the jury as follows:

. This is an action brought by Adam Kommiskey against The Plymouth Coal Company, to recover a certain amount of money which he claims is due him from that company, for work and labor performed in their mine. It seems that the plaintiff went to work for the defendant in March, 1885, that he worked eight shifts, as they are called, at $2.12 per shift, loaded 48 cars, and that although he has frequently demanded his pay from the defendant for this work, he has not yet received it. It seems also, from the testimony of the plaintiff, that he had worked for the company for about a year, and that previous to this particular work he had been paid for his labor

in the mines by Mr. Lance, who acted as paymaster and who kept a store there, where the accounts were also kept. The defence consists in an allegation that the company are not liable to the plaintiff, because he was employed to do this work, not by the company, but by a miner, or a contractor with the company, named Rothers.

[This case raises a question of some importance in this mining region, which has not been definitely settled, so far as I know, by any decision of the Supreme Court. The question is one of law, and therefore it is the duty of the court to give the jury definite instructions in regard to their views of it. Hence, we say to you, that while it is true that a party is only liable to a contractor for the price of a contract piece of work, and is not responsible to other men employed under the contractor as sub-workmen, nevertheless, in a country devoted to mining, and where the custom is for miners to employ their laborers, and where also it is the custom that the company or operator shall settle not only with the miner but also with the laborer, that in such a case the custom makes the law, and the company or the employer may be liable to the laborer for his earnings, although they have made a contract with the miner to do a certain amount of work in the mines at a certain price.

Now, we have the testimony of Mr. Davis, who states that he has been employed in the coal mines for several years, and that he was the inside foreman of this particular mine at the time to which your attention has been directed by the evidence in this case. He states, furthermore, that the mining has been done at that mine through the medium of laborers and miners, as is generally the case in this region. He also states that it has not been the custom at this mine for the miner to draw his laborer's pay. This is qualified to some extent by his cross-examination, but the fact remains that it has not been the custom at this mine, heretofore, for the miner to draw the laborer's pay, without some order or direction to the contrary by the laborer; and we say to you that, in our opinion, the law is this: That where a coal company employs or contracts with a miner, and the miner employs the laborer, and keeps his time, and returns it to the employer; and where, furthermore, it has been the custom of the employer to pay the laborer according to this return, that in case any change

of practice is made at that particular mine in this regard, it is the duty of the company or employer to notify the laborer of that change, or else the company or employer will still be liable to pay the laborer for his work. Therefore we say to you that, in our judgment, in this particular case, it having been shown that for some months previous to the time in question, this laborer had been paid by the company upon returns of time made by the miner, and that the company had given no notice to him of any change in their practice in this regard, if you are satisfied that his claim is not denied, is correctly stated as to the amount of work done, and the price, then having received no notice of this change of practice, he would be entitled to your verdict against this company for the amount remaining due him for his services. We state this distinctly as our opinion, so that it may be fully understood, and we be corrected in our law if we are reviewed by a higher tribunal, to which this case will probably be taken.

Under all of these circumstances, we say to you as matter of law, there being no question about the amount involved, the plaintiff is entitled to your verdict.]¹

I am asked by defendant's counsel to charge you upon certain points in writing, as follows:

1. From the undisputed evidence in the case, the plaintiff was an employee of a miner named Rothers and not of the said defendant, and the verdict of the jury should be for the defendant.

We decline so to charge you.²

2. There has been no contract shown between the plaintiff and the defendant, and therefore there can be no recovery.

We decline so to charge you.³

3. There has been no such custom as to the paying of the laborer by the miner as would hold the defendant here; particular customs do not make law; if this were the custom here, it would be particular and therefore would bind nobody. Taken as a whole, we decline to affirm that point.⁴

4. That the only evidence as to custom, general or particular, is that the defendant would stop from the miner the wages of the laborer, only when he had previously had his time returned into their office; and the plaintiff not having done this previous to the payment of the miner, cannot recover.

We decline to charge you as stated in that point.[5]

The jury found for the plaintiff for $18.31; and, after judgment entered, the defendant took this writ, assigning as error:

That part of the charge embraced in [ ] [1]

The answers to the defendant's points, [2, 3, 4, 5.]

*Mr. G. L. Halsey* (with him *Mr. Geo. W. Shonk*), for the plaintiff in error:

If the defendant company was indebted to the plaintiff below, it must have been upon some contract, either written or verbal, and some proof of such contract must have been exhibited, before the jury should have been permitted to find the verdict.

There are two kinds of customs, general and particular: Shars. Bl. Com., 67, 68. In Pennsylvania a particular custom has been defined to be, a usage so long established and so well known as to have acquired the force of law: Adams v. Insurance Co., 76 Penn. St. 414.

The court charged that we were liable to the plaintiff below because we had paid him prior to this time upon the order of the miner. A custom must be shown to be ancient, uniform, notorious and reasonable: Cape v. Dodd, 13 Penn. St. 33; Dean v. Swoop, 2 Binn. 72.

There was no paper-book upon the part of the defendant in error.

OPINION, MR. JUSTICE CLARK:

The Plymouth Coal Company, in the year 1885, was operating an anthracite coal mine, known as the Dodson mine, in Luzerne county. John B. Davis employed the miners for the company, and was the inside foreman; Walter Lance had charge of the accounts, and paid the men.

The plaintiff, Adam Kommiskey, was employed as a laborer by one Rothers, who, it seems, had a contract with the company, by the terms of which he was to furnish his own laborers and supplies, and to mine coal and drive headings at certain prices, viz., seventy-six cents per car for coal, and $1.65 per yard for headings. Kommiskey was hired by Rothers as a laborer to assist him in the work, at the rate of $2.12 per shift.

He does not pretend to have been in the direct service of the company; he admits that he was employed by Rothers, and having entered into contractual relations with Rothers for the work, no promise would ordinarily be implied on the part of the company to pay the price.

It appears, however, that when the laborers' time was "turned in," the usage of the company had been to pay the laborers and charge the amount to the miner's account; this would seem to have been the company's general mode of doing business.   The "turning in" of the laborers' time by the miner was in legal effect an order on the company to pay the amount; and the company, recognizing this form of settlement between the miner and his men, paid the men as if they had been in the company's service.

Of course, under such circumstances, there was no primary liability on the part of the company to Kommiskey as for work or labor done; if there was any liability at all on the part of the company, it arose by implication from the company's general mode of doing business with the men and the miners.   If the company had adopted and followed a general rule or regulation to this effect, upon which laborers relied for payment of the price of their labor, it would, perhaps, be bound at least to the extent of the balance in its hands without any formal acceptance of liability; but that obligation could only exist when the laborers' time had in fact been turned in before the miners' account had been fully drawn.

If there was any evidence in this case that Kommiskey's time had been turned in to the company by Rothers, that evidence was for the jury; it was certainly clear error for the court to give binding instructions that the plaintiff was entitled to the verdict.   The plaintiff is a Hungarian.   His knowledge of the English language appears to have been very imperfect indeed.   He stated that when he called upon the company for his money, he had with him an interpreter, named Joseph, and that Mr. Lance, the company's paymaster, told him that his time was "turned in," but the miner (Rothers) had taken everything out of the store.

From a careful examination of his testimony, however, it is very uncertain whether he understood Lance, or whether he derived his impressions of what Lance said from his interpre-

·ter. Joseph, the interpreter, was not produced as a witness to state what Lance said on that occasion, and proof of his declarations were of course incompetent. On the contrary, Mr. Lance testifies that Kommiskey's time was not turned in; that the company was not authorized to pay for his labor, and that, in fact, he did not know that Kommiskey was in Rothers' service until after Rothers had drawn the money in full. The testimony of Davis is substantially to the same effect.

It was Kommiskey's duty to see to it that Rothers had made a proper return of his labor to the company; he could have no possible claim upon the company unless it was so returned, and whether it was or not, was certainly for the determination of the jury and not for the court.

> The judgment is reversed, and a *venire facias de novo* awarded.