John C. Haddock, Doing Business as The Plymouth Coal Company, Plff. in Err., v. Frank Rotkofski.

Although by a custom of a mining region a miner's laborers have their time "turned in" to his employer and are then paid by the employer out of the miner's wages, yet, without proof that a laborer's time has been so "turned in" or that the employer had notice of the laborer's services, the laborer cannot maintain against the employer an action for his wages after the miner has been paid by the employer in full.

(Argued April 13, 1887. Decided May 23, 1887.)

January Term, 1887, No. 312, E. D., before MERCUR, Ch. J., GORDON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ. Error

NOTE.—The decision in the case is based on Plymouth Coal Co. v. Kommiskey, 116 Pa. 365, 9 Atl. 646, where the same custom was considered. This is followed in Fairfield v. Wyoming Valley Coal Co. 142 Pa. 397, 21 Atl. 874, in which case it was said that the rights of the laborer can rise no higher than those of the miner, and no suit can be maintained until the wages are due to the latter.

to the Common Pleas of Luzerne County to review a judgment on a verdict for the plaintiff in an action of assumpsit. Reversed.

The facts as they appeared at the trial before WOODWARD, J., are stated in the opinion.

The plaintiff having testified to the circumstances under which the services for which he claimed compensation were rendered, and that for a previous month's work he had received his pay from the defendant's clerk, was asked on cross-examination:

*Q.* Who employed you at the mines?
*A.* The miner, Ed. McCormick.
*Q.* Where was he when he employed you?
*A.* He used to be working in another place; that man went to him and coaxed him back.
*Q.* Ed. McCormick went to you?
*A.* Yes, sir, and coaxed me to take me away.
*Q.* What did McCormick say to you?
Objection.
By the Court: As I understand it that is not cross-examination.

Exception. First assignment of error.

The defendant proposed to ask, on cross-examination, the question of John B. Davis, the plaintiff's witness on the stand, "How was the work being done in this air way in which plaintiff was employed," for the purpose of showing the custom with reference to the payment of the laborer therein.

Objection: That this is an attempt to introduce upon cross-examination matter of defense.

By the Court: "The examination in chief having brought out the fact of a custom existing in the mine as between the miner and the laborer, you may cross-examine in such a way as to show that the relation of these particular parties was not that of miner and laborer; that would be cross-examination. If it goes beyond that, it would certainly not be cross-examination on the same subject-matter."

Exception. Second assignment of error.

The defendant proposed on cross-examination to ask the same witness on the stand:

*Q.* You say McCormick did this by contract?
*A.* Yes, sir.
*Q.* How much did he get for driving?
*A.* Two dollars per yard—lineal yard.
*Q.* What did he have to find?
Objection.
*A.* Everything that he wanted. ·
By the Court: I do not see how that has any bearing on this question, unless the laborer had notice of it in some way.

The question is asked for the purpose of enlightening the court as to the contract between the plaintiff and McCormick.

*Q.* What did McCormick have to find under his contract?

Objection. Not cross-examination.
Objection sustained. Exception. Third assignment of error.
The defendant also proposed to ask Edward McCormick, a witness on the stand for the defendant, whether or not the plaintiff, Frank Rotkofski, had not sued him for the claim that he was now suing the defendant for. Objection. Objection sustained. Exception. Fourth assignment of error.

The court charged the jury, *inter alia,* as follows:
We say to you in regard to these questions that where a universal custom exists with regard to the carrying on of any business, that custom as a general thing becomes the law of that business, in the absence of any law to the contrary. Now the universal custom in this mining country is that the miner blasts or loosens the coal, and the laborer loads it into the cars, but the laborer is uniformly employed by the miner. The custom also is for the miner to keep the time of the laborer and turn it in to the employer, and upon that return the payment is generally made.

It appears in the present case that for the month of July, 1884, this plaintiff was employed by McCormick, the miner; that he went to work as a laborer under him in these mines; that McCormick recognized the relation existing between them as that of miner and laborer, and in view of that relation kept the time of the laborer and turned it in to the company in the usual way.

It further appears that for the month of August and a portion of September this plaintiff continued to work for McCormick, without any knowledge or notice, so far as the evidence shows, that there had been any change in the relations between McCormick and the company from that which had previously existed in the month of July.

We say to you as a matter of law that under these circumstances the plaintiff had the right to assume and believe, and to act upon that assumption and belief, that the same relation continued to exist between this company for the month of July as binding upon them, and that under all the circumstances presented in this case the plaintiff was entitled to have notice from the company that he must look to McCormick for his pay and not to it; and there being no evidence in this case of any such notice, we say to you that the universal custom in this mining country ought to be applied by you to this case. Fifth assignment of error.

The defendant submitted, *inter alia,* the following points:

2. The only evidence in the case upon the question of the turning in of the time of the plaintiff is that of Edward McCormick, the miner, that he did not turn in the time. There can be no implied contract based upon the custom alleged of charging the operator for the wages of the laborer of the plaintiff.

*Ans.* That point we decline to affirm. Sixth assignment of error.

3. From the uncontradictory evidence in the cause there was no contract of hiring between the plaintiff and defendant, and the verdict of the jury must be for the defendant.

*Ans.* That point we decline to affirm. Seventh assignment of error.

4. The custom existing between the laborer and the operator, as to the payment of wages, would not apply to the facts of this case, this being a case between an air-way contractor and a laborer.

*Ans.* We cannot affirm that point as we understand the law, and it is disaffirmed. Eighth assignment of error.

Verdict and judgment were for the plaintiff, for $48.86.

*George W. Shonk* and *G. L. Halsey,* for plaintiff in error.— The question, "What did McCormick say to you?" was certainly

part of the subject-matter of the examination in chief. Mitchell v. Welch, 17 Pa. 339, 55 Am. Dec. 557.

The purpose of our offer which is the subject of the second assignment of error was to show by the witness on the stand that the work which we contracted with McCormick to do was different from that required of contracting miners for the mining of coal.

This we conceived to be proper cross-examination, because the witness had been asked in chief as to the labor performed by the defendant in error in the mine. If we had gotten this testimony, we would have shown that this laborer received from his employer, McCormick, a greater compensation than the coal miner pure and simple gives to his laborer, and therefore that the relation between McCormick and Rotkofski was different from that which existed between the coal miner and laborer in the mine.

The question what McCormick was to find under his contract was cross-examination, because the plaintiff asked Mr. Davis in his examination in chief about McCormick's employment by the Plymouth Coal Company.

It had this bearing: if we owe Rotkofski anything it is because McCormick hired him. Now the witness was asked in chief if McCormick worked for the Plymouth Coal Company. He said he did. This inquiry was competent, to show that he did not occupy any relation to us that justified his employing anyone for us. We should have been allowed an answer to the question, to completely explain McCormick's relation to us.

We were entitled to ask McCormick when he was on the stand whether or not Rotkofski had not sued him for the claim, for the purpose of showing that Rotkofski had made a demand upon McCormick for his wages and recognized him as his employer.

A custom, before it can bind anyone, must be proved by evidence, clear, uncontradictory and distinct. Adams v. Pittsburg Ins. Co. 76 Pa. 414.

Rotkofski was employed in this mine about three months. There is no evidence as to how well known this custom had become. There is no testimony in this case showing what the effect was of turning the time into the office,—what was done there in pursuance of such action.

The court said to the jury that it was the universal custom in this mining region.

There was no testimony adduced as to the universal custom in this mining region.

The jury were also told that, the custom having been established, before the plaintiff in error could be relieved from his obligations under it he must have brought knowledge home to the laborer that he was no longer to be bound by it.

We, therefore, contend that there was no such custom here as makes us answerable in this behalf to the said defendant in error. Potts v. Aechternacht, 93 Pa. 141; Jones v. Wagner, 66 Pa. 433, 5 Am. Rep. 385.

*W. H. McCartney,* for defendant in error.—The principal contention on the part of the plaintiff in error is as to the law of custom which affects this case. It is claimed that there was not sufficient evidence of custom to bind the defendant below. The answer to this is that Haddock knew of the custom and acted on it, for he paid Rotkofski for the month of July.

OPINION BY MR. JUSTICE CLARK:

In September, 1884, John C. Haddock, who was operating an anthracite coal mine in Luzerne county, contracted with Edward McCormick to drive an air way of certain dimensions in the mine; McCormick to receive $2 per lineal yard. Rotkofski was hired by McCormick to assist in the work, and was to receive for his labor at the rate of $2.10 per shift. He does not pretend to have been in the immediate service of Haddock, but of the contractor, McCormick, and therefore no promise on the part of Haddock can arise by implication.

It is contended, however, that there was a custom or usage in the operation of this mine, for the contractor to "turn in" the time of his laborers, and that Haddock thereupon paid the laborer's claims, charging the contractor's account; and, upon this general usage or mode of conducting the business, the plaintiff claimed to recover.

The difficulty in this case, however, is that there is not the slightest evidence that Rotkofski's time, for which he claims, was turned in to Haddock, or that Haddock even knew that the services had been rendered. McCormick, it appears, received full pay, according to his contract, drew out the entire balance due him, including the amount which he should have turned in for Rotkofski.

The case is in all respects similar to, and is ruled by, Plymouth Coal Co. v. Kommiskey, 116 Pa. 365, 9 Atl. 646, and upon the authority of that case the —

Judgment is reversed and a *venire facias de novo* awarded.